**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.   : | No. 09-MJ-252 (AK) |
| : | |
| KAYLA M. SMITH,   : | |
|     Defendant.   : | |
| : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing. For the reasons set forth herein, the Court should sentence defendant to a term of imprisonment of 180 days, suspend execution of the sentence, impose a three-year period of supervised probation, and order defendant to pay the full restitution amounts agreed upon by the parties to the victims in this case, the United States Office of Personnel Management ("OPM") and U.S. Investigations Services, Inc. ("USIS").

I. **Factual Background**

During the plea proceedings, defendant agreed with the Statement of Offense submitted to the Court by the government, which has been incorporated into the Presentence Investigation Report ("PSR"). See PSR ¶¶ 8-15. In summary, defendant, a 25-year-old former investigative specialist at USIS, falsified work on background investigations of federal civilian employees. Between March 2007 and August 2008, in approximately one out of every three credit checks in her Reports of Investigations ("ROI's"), defendant represented that she had received no response to her multiple requests to creditors and collection agencies for credit checks when, in truth and

in fact, defendant had received credit information relating to the subjects from these entities. All of these ROI's were utilized and relied upon by the agencies requesting the background investigations to determine whether the subjects of the investigations were suitable for positions having access to classified information, for positions impacting national security, or for receiving or retaining security clearances.

II. **Defendant's Plea**

On July 22, 2009, the government filed a two-count Information charging defendant in Count Two with Fraud in the Second Degree, in violation of Title 22, D.C. Code, Sections 3221(b), 3222(b)(2). On August 21, 2009, defendant pled guilty to Count Two of the Information. Sentencing is now set before the Court on December 9, 2009, at 2:00 p.m.

III. **Sentencing Recommendation**

The maximum penalty for Fraud in the Second Degree is a term of imprisonment of 180 days and a fine of $1,000. Although the District of Columbia has enacted advisory sentencing guidelines for felony offenses, these guidelines are inapplicable here because defendant pled guilty to a misdemeanor. Accordingly, this Court should consider the following four factors in fashioning an appropriate sentence in this case: (1) the protection of society against wrongdoers; (2) the punishment -- or much better -- the disciplining of the wrongdoer; (3) the reformation and rehabilitation of the wrongdoer; and (4) the deterrence of others from the commission of like offenses. Spanziano v. Florida, 468 U.S. 447, 477-78 (1984) (Stevens, J., concurring); Williams v. New York, 337 U.S. 241, 251 (1949); Collins v. Francis, 728 F.2d 1322, 1339 (11th Cir.), cert. denied, 469 U.S. 963 (1984). The sentencing judge may consider a wide variety of information related to a defendant's background, character, and conduct, criminal or otherwise, when

imposing a sentence.  The Court may also weigh the details of the crime for which the defendant is being punished, Williams v. Oklahoma, 358 U.S. 576 (1959), and the deterrent effect of the sentence on others.  See, e.g., United States v. Barbara, 683 F.2d 164 (6th Cir. 1982).

In weighing these factors, the government submits that imposing a term of incarceration of 180 days, suspending execution of the sentence, and requiring defendant's successful completion of a three-year term of supervised probation and restitution payments of $95,275.37 to USIS and $4,262.26 to OPM is fair and balanced and will serve as a deterrent, not only to defendant, but to other investigative specialists who work on national security background investigations for the federal government.

Defendant admitted during the plea proceedings that over a period of approximately seventeen months she falsified work on background investigations of applicants for federal employment and security clearances.  As a contract investigative specialist for the federal government, defendant was – or should have been – aware of the importance of her work and the critical elements of trust and ethics inherent in her position.  As Thomas L. Forman, Assistant Director of OPM's Federal Investigative Services Division ("FISD"), explained, all investigative specialists for OPM receive training during which they are told that they must "NEVER falsify, manufacture, or enhance testimony, or in any way misrepresent any information collected from sources."  Government Exhibit 1, p.2.  Further, as Michael M. Reynolds, Integrity Assurance Manager of USIS, explained, shortly after she began working at USIS, defendant signed an "Integrity Pledge," which reflected "her understanding of the importance of integrity in her work, the consequences faced for deliberate misrepresentation, misconduct, negligence, or falsification of any part of a personnel security investigation."  Government Exhibit 2, p.1.  In fact, at one

point defendant was part of the training team for new hires, meaning that she was responsible for mentoring new hires and auditing their work. Yet, in her own investigations, defendant chose to flagrantly disregard her most basic duty – to accurately report the results of her investigations. She did so knowing that federal agencies were relying on both the substance and integrity of her investigative reports in making hiring and security clearance determinations. Her conduct was intentionally deceptive and carried out over the course of nearly one-and-a-half years. Indeed, had she not been caught, it is more than likely that she would have continued to falsify her work on background investigations.

The issuance of a security clearance or a job offer to someone whose background has not been properly investigated can pose a serious risk to national security and to the effectiveness of the federal civilian workforce. As Assistant Director Forman explained, "agencies rely on the integrity and completeness of OPM's background investigation when making their adjudicative decisions." Government Exhibit 1, p.1. Assistant Director Forman further stated that "the integrity of an OPM background investigation is paramount to protecting national security and promoting the efficiency of the Federal service." Id. at 1-2. Even where a credit check that was falsified later turns up no derogatory information about the applicant, the damage to the integrity of the investigation remains. As Assistant Director Forman explained,

> Any question concerning the accuracy and truthfulness of the testimonies in the ROI makes the entire investigation suspect. It does not matter that a credit check would have resulted in no identifiable records or adverse information. The fact that an investigative specialist represented in the ROI that she had received no response to her requests for credit checks, when in fact she had received credit information in relation to the subject, is enough to raise doubts about the entire investigation and the other work that investigative specialist claimed to have performed.

Government Exhibit 1, p.2.  Upon discovering a falsified credit check in an ROI, OPM must recontact all sources in the ROI and remove all falsified entries from the ROI in order to ensure that the ROI is completely accurate.  As Assistant Director Forman stated, the "cost of investigating and correcting the casework is substantial – both in time and money."  Government Exhibit 1, p.2.  Beyond the cost of the recovery effort, Assistant Director Forman explained that the "damage Ms. Smith caused to OPM's investigations program cannot be so easily determined."  Id.

However, defendant's history, characteristics, and recent conduct suggest that a sentence of probation is appropriate.  Defendant is 25 years old, has no criminal record, and has few resources. (PSR ¶¶ 21-22, 48-51.)  She has an Associate's degree from Butler County Community College in Pennsylvania.  (PSR ¶ 36.)  She is gainfully employed as a full-time agency service associate at a life insurance company.  (PSR ¶ 39.)  Furthermore, defendant has clearly exhibited remorse for her actions.  Unlike so many white-collar defendants who stubbornly resist admitting what they have done, defendant came in promptly and admitted her misconduct.

It appears that defendant is truly ashamed and wants to right the wrong she has committed.  Given defendant's prompt admission of guilt and her cooperation with OPM-FISD, it is unlikely that defendant will commit additional crimes in the future.  This reduces the need for specific deterrence of defendant through imposition of a harsher sentence than that which the government recommends.  A sentence of 180 days incarceration, execution of sentence suspended, a three-year term of supervised probation, and an order of restitution should be

sufficient to promote respect for the law and, as Assistant Director Forman explained, "to show that this type of conduct is not tolerated by the Court or OPM." Government Exhibit 1, p.2.

IV. **Restitution**

As set forth in the written plea agreement, defendant agreed to pay restitution in the amounts of $95,275.37 to USIS[1] and $4,262.26 to OPM.  (PSR ¶ 63.)  Accordingly, the Court should order restitution in these amounts.

## CONCLUSION

WHEREFORE, the government respectfully requests that this Court sentence defendant to a term of imprisonment of 180 days, suspend execution of the sentence, impose a three-year period of supervised probation, and order defendant to pay the agreed-upon restitution to USIS and OPM.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney

_____/s/_____
ELLEN CHUBIN EPSTEIN, DC Bar 442861
THOMAS E. ZENO, DC Bar 348623
Assistant United States Attorneys
Fraud & Public Corruption Section
555 Fourth Street, N.W., 5th Floor
Washington, DC 20530
(202) 514-9832
Ellen.Chubin@usdoj.gov
(202) 514-6957
Thomas.Zeno@usdoj.gov

---

[1] Although Mr. Reynolds states in his Victim Impact Statement for USIS (Government Exhibit 2, p.1) that USIS has expended $129,211.77 through October 17, 2009, on the recovery effort in this case, the parties agreed and it was their intent that the amounts of restitution to the victims would be based on the amounts expended as of the time of defendant's guilty plea.